## KEOKUK JUNCTION RAILWAY CO., Petitioner,

v.

## SURFACE TRANSPORTATION BOARD and United States of America, Respondents.

### Burlington Northern and Santa Fe Railway Company, Intervenor.

No. 01–1305.

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 2002.

Decided June 14, 2002.

William A. Mullins argued the cause and filed the briefs for petitioner.

Theodore K. Kalick, Attorney, Surface Transportation Board, argued the cause for respondents. With him on the brief were Ellen D. Hanson, General Counsel, Craig M. Keats, Deputy General Counsel, John P. Fonte and Robert B. Nicholson, Attorneys, U.S. Department of Justice.

Michael E. Roper and Robert M. Jenkins III were on the brief for intervenor. Richard E. Weicher entered an appearance.

Before: GINSBURG, Chief Judge, and RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

After the Keokuk Junction Railway Company terminated the long-standing agreement whereby trains of the Burlington Northern and Santa Fe Railway Company crossed its track, the BNSF convinced the Surface Transportation Board to order that the crossing be allowed. The KJRY now petitions this court for review. We grant the petition because the BNSF has not received from the Board the certificate without which the Board lacks authority to order a crossing.

## I. Background

In 1881 the predecessor of the Burlington Northern and Santa Fe Railway Company contracted with the predecessor of the Keokuk Junction Railway Company to cross the latter's track at Keokuk, Iowa, just west of Bloody Run Creek, a tributary of the Mississippi River. The BNSF's main line runs parallel to and south of the KJRY's main line, but the BNSF also owns a line of track (the Mooar Line) to the north of the KJRY's main line. The BNSF's trains therefore must cross the KJRY's track to get from the Mooar Line to the BNSF's main line.

From 1881 until 1993, the BNSF crossed the KJRY via a "crossing diamond" whereby the BNSF track directly overlapped that of the KJRY, forming a large "X" at the intersection. After a

significant flood in 1993, one of the BNSF's customers requested that the BNSF access the Mooar Line at a location east of Bloody Run Creek to avoid future problems and damage from flooding. Under this plan, the BNSF's trains would use a quarter mile of the KJRY's track in order to travel from the BNSF main line to the Mooar Line. The two companies entered into a "Crossing Agreement" with respect to this plan in 1996.

In 1998 the KJRY tried to buy the Mooar Line from the BNSF. When the BNSF declined to sell, the KJRY informed the BNSF of its intention to terminate the crossing agreement. Soon thereafter, the BNSF petitioned the Board for a declaratory order requiring the KJRY to let its trains cross the KJRY's track. The Board granted the order, of which the KJRY now petitions for review.

## II. Analysis

The Interstate Commerce Act, as amended, provides that no rail carrier may "construct an extension to any of its railroad lines" unless the Surface Transportation Board "issues a certificate authorizing such activity." 49 U.S.C. § 10901(a). The statute goes on to provide, at § 10901(d)(1):

> When a certificate has been issued by the Board under this section authorizing the construction or extension of a railroad line, no other rail carrier may block any construction or extension authorized by such certificate by refusing to permit the carrier to cross its property.

By its terms, therefore, § 10901(d)(1) prohibits a rail carrier from blocking a crossing only "[w]hen a certificate has been issued by the Board."

The Board has not issued the BNSF a certificate for construction or operation of the track that runs north and south across the KJRY's line. Why? The original track was constructed in 1881, before the enactment of the certificate requirement; and when the BNSF relocated the crossing after the flooding in 1993 by laying new track, it did not obtain a certificate because it was merely rebuilding track that had been lawfully constructed without one. The KJRY now argues that because the statute authorizes the Board to order a crossing only upon its issuance of a certificate, and the Board has not issued one, it erred in ordering the KJRY to allow the BNSF's trains to cross the KJRY's line.

The Board in its decision did not explain why, despite not having issued a certificate, it considered itself authorized to issue the order. Instead, it merely referred to the issuance of a certificate as "a formality that, in a case such as this one, we do not believe is necessary." The Board in its brief gives similarly short shrift to the KJRY's argument, writing only that "even requiring the issuance of a certificate for an existing line constructed prior to the advent of regulation would be a needless formality, elevating form over substance." The BNSF's brief does no better, acknowledging that § 10901(d)(1) on its face requires the Board to issue a certificate before it orders a crossing; maintaining that "[t]he Board could issue, or re-issue, a construction certificate in a [sic] face of a dispute regarding an existing crossing"; and resisting that course on the ground that it "would be an empty formality." We take the view, however, that the issuance of a certificate, formality or not, is the condition precedent the Congress prescribed.

Indeed, in this case the issuance of a certificate may not be a mere formality — if there is merit in any of the several grounds upon which the KJRY opposes it. The KJRY argues that (1) the Board may not lawfully issue a certificate for track built before the enactment of § 10901; (2)

because the track at issue is switching track, it is exempt from the Board's authority to impose a crossing right, *see* 49 U.S.C. § 10906 ("Notwithstanding section 10901 ..., [t]he Board does not have authority under this chapter over ... switching, or side tracks"); and (3) the BNSF's trains operate over rather than "cross" the KJRY's track. We will not have occasion to deal with these arguments, however, unless and until the Board issues the BNSF a certificate following a proceeding in which the KJRY presents its objections anew.

### III. Conclusion

For the foregoing reasons, the petition for review is granted and the order of the Board is

*Vacated.*